UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN COATS,

      Petitioner,                                 Case Number 1:10-CV-11658
                                                    Honorable Thomas L. Ludington

v.

SHERRY BURT,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT
OF HABEAS CORPUS, CERTIFICATE OF APPEALABILITY,
AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Shawn Coats was convicted in the Wayne Circuit Court of assaulting a police officer, carrying a concealed weapon, possession of a firearm by a felon, and commission of a felony with a firearm. He was sentenced as a third-offense habitual felony offender to two-to-ten years for the felon-in-possession conviction to be served consecutively with a mandatory two-year term for the felony-firearm conviction. Petitioner was sentenced to time served for his other convictions.

Petitioner now seeks a writ of habeas corpus in this Court. The petition raises five claims: (1) insufficient evidence was presented at trial to sustain the firearm convictions; (2) insufficient evidence was presented at trial to negate Petitioner's self-defense claim; (3) Petitioner was denied his right to present a defense when he was not allowed to call defense witness Carlton Smith; (4) the trial court erroneously allowed the prosecutor to impeach Petitioner with convictions that were over ten years old; and (5) Petitioner was denied the effective assistance of trial counsel. For the following reasons, the petition will be denied.

**I**

Petitioner's convictions arose from a late-night traffic stop. Detroit Police Officer Darius Mitchell testified that he was driving in the early morning hours of December 15, 2007, with his partner, Jason Bradford, when they noticed a vehicle speeding. They pulled the vehicle over. Mitchell arrested the driver, Joseph Gibson, for driving without a license and placed him in the police car.

Mitchell testified that while he moved Gibson to the squad car, Petitioner fled on foot. Mitchell saw Bradford give chase and quickly catch Petitioner. Mitchell heard an object fall onto the street and saw that it was a handgun. Petitioner then managed to break away from Bradford and run down an alley, but Bradford pursued him again.

Mitchell then took the two other people from their car and placed them in the squad car. One of the passengers was a disabled man who required assistance. On direct examination, Mitchell testified that he retrieved the handgun from the street before he transferred the passengers, but after a video taken from the squad car was played for him several times during cross-examination, Mitchell testified that he recovered the handgun and placed it in his trunk after transferring the disabled passenger.

Officer Bradford testified that Petitioner was initially sitting in the rear passenger seat of the vehicle they pulled over. His job was to keep control of the three other occupants while his partner arrested the driver. Bradford testified that he noticed Petitioner fidgeting inside the car. Petitioner then opened the car door and ran. Bradford tackled him from behind and heard an object hit the ground. Bradford believed based on the sound that he had knocked a handgun from Petitioner's waistband, but he did not see it.

Petitioner broke free and ran down a residential alley.  About seven or eight houses down the alley, Petitioner tried to cut through a backyard when Bradford tackled him again.  Petitioner began to punch and strike him, so Bradford gave him two knee strikes to the chest.  Petitioner stopped punching, and Bradford believed that Petitioner tried to grab his service weapon. Bradford then punched Petitioner several times in the kidneys and ribs.  As Bradford attempted to handcuff Petitioner, Petitioner bit into his arm.  Bradford testified that after Petitioner was in handcuffs, his partner informed him that he recovered a weapon from the street.  Bradford thought the entire incident lasted between four and eight minutes.

Investigator Pamela Walker testified that no fingerprints were obtained from the handgun recovered at the scene.  She testified that in her experience it was rare for usable fingerprints to be obtained from handguns.

At the beginning of the trial, defense counsel stated that he was new to the case and had also taken time off because his grandmother had passed away.  He informed the court that he had recently discovered a witness named "Joe," who was one of the passengers in the car, and he planned to call him as a witness.  The prosecutor responded that the person was on their witness list, and they had a statement from him, so she had no objection.

Joseph Gibson subsequently testified for the defense that he knew Petitioner for about three years.  Gibson testified that Petitioner, Carlton Smith, and Eugina Logan were driving with him in his car on the night in question.  They were pulled over by a police car that had almost hit them after the police car had run a red light.  Gibson told the officer that his license had been suspended due to unpaid tickets.  The officer told everyone to put their hands on the ceiling of the car.  Gibson was then placed in the patrol car.  Gibson testified that the officer then went

back to get Carlton out of the vehicle, but because Carlton has cerebral palsy, it took time to place him in the patrol car. Finally, Eugina Logan was placed in the patrol car by the same officer.

From the patrol car, Gibson saw Petitioner and the other police officer running towards an alley. He saw the officer attempt to grab Petitioner, but miss. He saw the officer fall to the ground, and Petitioner flee into the alley. Gibson did not see anything in Petitioner's hands. Once the two got into the alley, six or seven more police cars arrived, and officers were everywhere. Gibson saw Petitioner being lifted off of the grounds and be taken into custody. Gibson testified that he did not know whether Petitioner had a gun in his possession that night but that he did not see one.

Defense counsel then attempted to call the passenger with cerebral palsy, Carlton Smith, as a witness. The prosecutor objected, stating that she had not objected to the first witness because he was on the prosecution's witness list, but that she never received a witness list from the defense, and Smith was not on the prosecutor's list. The Court sustained the objection.

Petitioner testified in his own defense. He admitted that he had previously been convicted of felony possession of cocaine. Petitioner testified that on the night in question he was picked up by Gibson. Gibson told Petitioner that he had to pick up some other people. They picked up Eugina and Carlton. When they drove through an intersection, a police car ran through a red light and almost hit them. The police car then turned around, put on their lights and pulled them over.

Petitioner testified that one officer put Gibson in the police car, and they were told to put their hands up. Petitioner explained that he had been high earlier and then had a drink to calm down, so he had a "buzz." He testified that he was not in his right state of mind.

Petitioner testified that he was thinking about the tickets and warrants he had and when they took Gibson to the police car, he thought he was going to jail, so he jumped out and ran. An officer chased him and tried to tackle him by grabbing his coat. Petitioner ducked the tackle but hit his head on the ground. Petitioner ran down an alley but his pants started coming down, so he tripped and fell. Petitioner testified that he told the officer that he would cooperate, but the Officer said "you know you don't run" and started hitting Petitioner. Petitioner recalled being grabbed and choked, and he started to feel he was losing consciousness. Petitioner testified that his vertebrae were broken. Petitioner denied striking the officer or trying to take the officer's gun. Petitioner admitted that he bit the officer in self-defense because the officer was hitting him too hard, and he feared for his life.

Petitioner testified that another officer came and kicked him in the side of the head, knocking him out. They were calling him names and taunting him. Petitioner asked the officers to take him to the hospital, but they took him to the police station first. The station lieutenant then directed the officers to take him to the hospital. Petitioner's medical records were entered as exhibits. Petitioner testified that he experienced pain in his back, his kidneys, he had a closed-head injury, headaches, migraines, and a fractured vertebrae. Petitioner denied that he had a gun in his possession.

Following arguments and instructions, the jury found Petitioner guilty of the charged offenses, and the court sentenced him as indicated above.

Petitioner filed a direct appeal in the Michigan Court of Appeals and asserted the same claims that he raises in the present petition. The court affirmed Petitioner's convictions. *People v. Coats*, No. 286821, 2009 WL 3789993 (Mich. Ct. App. Nov. 12, 2009) (per curiam).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court raising the same claims. The Michigan Supreme Court denied leave to appeal by standard order. *People v. Coats*, 485 Mich. 1129 (2010) (unpublished table op.).

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which governs this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue a writ of habeas corpus only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2); *see Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998). Mere error by the state court does not justify issuance of the writ. Rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotation marks omitted)).

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ

of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

Emphasizing the limited scope of this review, the Supreme Court writes that "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III

### A

Petitioner first claims that insufficient evidence was presented at trial to sustain his firearm convictions. Specifically, he asserts that the only evidence that he had a firearm during the incident was the testimony of two police officers who were trying to cover-up their own misdeeds. Petitioner claims that inconsistencies in the officers' testimony rendered it unreliable. He also points to the fact that no fingerprints were found on the weapon.

The Supreme Court instructs that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). The Supreme Court recently characterized this standard as

requiring a defendant to show that the jury's verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Under AEDPA review, however, the standard becomes even more difficult to meet. This is because "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (quotation marks omitted). This "twice deferential" standard does not permit a habeas court to engage in a fine-grained factual parsing. *Coleman*, 132 S. Ct. at 2064.

Here, the jury' finding did not fall below the threshold of bare rationality. Despite Petitioner's protestations, a reasonable jury could have believed the officers' versions of the events. On habeas review, a federal court does not re-determine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the fact-finder alone to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

As noted, the officers testified that Petitioner had a handgun hidden on his person and that it fell from him during the struggle. Petitioner asserted that the officers planted the weapon. The jury chose to believe the officers, and this Court will not second-guess that credibility determination.

**B**

Petitioner next asserts that the prosecutor presented insufficient evidence to rebut his claim that he acted in self-defense. The claim is not cognizable on habeas review: "The due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof

supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999).

## C

Petitioner's third claim asserts that his right to present a defense was denied when the trial court refused to let him call Carlton Smith as a witness for the defense.  The trial court sustained the prosecution's objection to calling this witness on the ground that Petitioner did not file a witness list.

The Supreme Court has interpreted the due process clause "to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  Some customs and principles, the Court instructs, are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and it is constitutional error to limit a defendant's right to present evidence where such exclusion would offend traditional principles of justice. *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).  Apart from these deeply rooted customs and principles, however, the Court has recognized that states have broad leeway to decide what relevant evidence a defendant may present in a state criminal trial.  *Id.* at 42–43.

The exclusion of a defense witness because he was not identified on a witness list does not offend fundamental principles of justice.  The Supreme Court has never held that requiring witness lists in advance of trial — and enforcing their contents — violates a criminal defendant's fundamental rights. On the contrary, the Court has upheld procedural rules that prevent a defendant from offering evidence or testimony when he has not complied with state procedures

-9-

aimed at giving the prosecution advanced notice of defense evidence. *E.g.*, *Williams v. Florida*, 399 U.S. 78, 81–86 (1970) (upholding constitutionality of Florida's notice of alibi rules); *Michigan v. Lucas*, 500 U.S. 145, 151–53 (1991) (rejecting per se rule prohibiting exclusion of evidence of defendant's past sexual conduct with victim where defendant did not comply with notice and hearing requirements of Michigan's rape shield law). The Michigan courts' decisions denying relief on this aspect of Petitioner's claim does not unreasonably apply Supreme Court precedent.

Moreover, any error was harmless.  In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman v. California*, 386 U.S. 18 (1967)." 551 U.S. at 121–22.  Under the *Brecht* standard, "an error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict."  *Fry*, 551 U.S. at 116 (quotation marks omitted) (quoting *Brecht*, 507 U.S. at 631).

Here, any error in excluding Smith's testimony did not have a substantial and injurious effect in determining the trial court's verdict.  Petitioner asserts that Smith was important because if the jury had seen for themselves the extent to which his cerebral palsy disabled him, it would have cast doubt on Officer Mitchell's testimony as to how quickly he was able to get Smith into the squad car and then recover the handgun.

Officer Mitchell testified on direct examination that he retrieved the handgun from the street after he placed the driver in the squad car. After the video tape from the squad car was played several times during his cross-examination, however, Mitchell testified that he remembered that he retrieved the handgun and put it in the trunk of the squad car after he placed Smith in the squad car but before he placed the female passenger in the squad car. During closing argument, the prosecutor stated that 37 seconds elapsed on the videotape between the time Smith was placed in the squad car and the female passenger was placed in the squad car.

Petitioner argues that it would have taken longer than 37 seconds to accomplish these tasks given Smith's disability. The argument is unpersuasive for several reasons.

First, it appears the 37-second time period did not begin until after Smith was already transferred to the squad car. Therefore, the length of time it took to transfer Smith was not material to the prosecutor's theory.

Second, the jury was already aware of Smith's disability. Mitchell testified that Smith could not speak or move. The driver, Gibson, also testified as to Smith's disability.

Finally, Mitchell's account of when he retrieved the handgun was subject to effective and rigorous cross-examination. Defense counsel played the relevant part of the videotape several times to challenge Mitchell's account. And he questioned why Mitchell chose to leave the gun on the street until after transferring two out of the three remaining occupants of the vehicle.

In sum, while exhibiting Smith's disability before the jury might have provided some additional benefit, the Court concludes that not doing so did not have a substantial impact on the outcome of Petitioner's trial.

**D**

Petitioner's fourth claim asserts that his trial was rendered fundamentally unfair when the prosecutor was allowed to impeach his credibility with convictions that were more than ten years old.

Absent an alleged constitutional violation, however, habeas review does not encompass state court rulings on the admission of evidence. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) *citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness" may it violate due process and therefore warrant habeas relief.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003).

The United States Supreme Court has declined to hold that the admission of similar "other acts"  violates due process. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). As the Sixth Circuit explains, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512.  Petitioner's challenge to the admission of the prior convictions does not warrant habeas relief.

**E**

Finally, Petitioner's fifth claim asserts that he was denied the effective assistance of counsel at trial.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court established a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors sufficiently serious that he or she

was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687.  Second, the

petitioner must establish that counsel's deficient performance prejudiced the defense. *Id.*

To prove deficient performance, a petitioner must identify conduct that was "outside the

wide range of professionally competent assistance." *Id.* at 690.  The reviewing court's scrutiny

of counsel's performance is highly deferential. *Id.* at 689.  Counsel is presumed to have rendered

adequate assistance and made each significant decision with the exercise of reasonable

professional judgment. *Id.* at 690.  The petitioner bears the burden of overcoming the

presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to

undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the [proceeding] cannot be relied on as having produced a just result."

*Id.* at 686.

The Supreme Court has recently emphasized that a federal court's consideration of

ineffective assistance of counsel claims arising from state criminal proceedings is limited on

habeas review due to the deference accorded trial attorneys and state appellate courts reviewing

their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*,

131 S. Ct. 770, 788 (2011) (citations omitted).  "When [section] 2254(d) applies, the question is

not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

**1**

To support his allegation of ineffective assistance of counsel, Petitioner filed a motion to remand in the Michigan Court of Appeals. The motion was supported by Carlton Smith's affidavit and requested an evidentiary hearing at which he would present Smith as a witness. Smith's affidavit stated that he saw the initial struggle between Petitioner and Officer Bradford, and he saw Petitioner run away after that struggle. He also claimed that he never saw Petitioner with a gun on the night in question, and that he believed he would have seen it or Petitioner would have told him about it. Smith also claimed that he did not see the other officer retrieve the gun from the street, nor did he see him put it in the trunk of the squad car. The Michigan Court of Appeals denied the motion for remand by form order.

In rejecting this allegation of ineffective assistance of counsel, the Michigan Court of Appeals erroneously stated that "defendant  . . . fails to disclose Logan's [sic] proposed testimony." This part of the decision is plainly wrong. Petitioner did, in fact, disclose Smith's proposed testimony by filing his affidavit along with the motion for remand. This was a procedurally correct method for Petitioner to present this claim to the state appellate court. See Mich. Ct. R. 7.211(C)(1); *People v. Ginther*, 390 Mich. 436 (1973).

The state court, however, found in the alternative that even if Smith testified that he did not see Petitioner with a gun, that it would have been cumulative to Gibson's and Petitioner's own testimony in this regard. This alternative ruling was not objectively unreasonable in light of the established Supreme Court standard. *See Wong v. Belmontes*, 130 S. Ct. 383, 390–91 (2009).

Both Petitioner and Gibson testified that Petitioner was not armed.  Petitioner testified to his version of the altercation with the officer, and Smith claims only to have seen the initial struggle. Accordingly, a reasonable argument can be made that Petitioner was not prejudiced by his counsel's failure to secure Smith as a witness because his testimony would have been cumulative to other defense witnesses.  Despite its initial misstep, the decision of the state appellate court therefore survives AEDPA review.

**2**

Petitioner next asserts that his counsel did not properly prepare defense witnesses for trial, did not rehabilitate them on redirect examination, and did not effectively impeach the prosecution witnesses.  Petitioner bears the burden under *Strickland* to demonstrate both that his counsel performed deficiently and that it resulted in prejudice.  This he does not do.  Instead, Petitioner merely asserts that his counsel was ill prepared for trial.  By not identifying how his counsel should have better prepared witnesses and conducted his examination of them, Petitioner did not satisfy his burden under *Strickland*.  *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief).

**3**

Finally, Petitioner asserts that his counsel was ineffective for not objecting to the prosecutor's tactic of questioning Petitioner about his medical records.  Petitioner argues that the tactic was improper because the prosecutor had successfully objected on hearsay grounds to Petitioner testifying on direct examination about what the doctors told him about his injuries. The Michigan Court of Appeals found that there was no legal basis for the objection, so counsel was not deficient for failing to object.  It also found that Petitioner did in fact testify about the

wounds he received during the struggle.  Furthermore, the jury was made aware of the contents

of the medical records because they were admitted into evidence by stipulation.  Petitioner has

not demonstrated how the state appellate court's rejection of this allegation was objectively

unreasonable.

Because none of Petitioner's allegations of ineffective assistance have merit, his fifth

claim does not provide a basis for granting habeas relief.

## IV

Before Petitioner may appeal this Court's decision, a certificate of appealability must

issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right."  28

U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing

threshold is met if the petitioner demonstrates that reasonable jurists would find the district

court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529

U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

In applying this standard, a district court may not conduct a full merits review, but must

limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.

*Id.* at 336–37.  Likewise, when a district court denies a habeas petition on procedural grounds a

certificate of appealability may not issue unless "reasonable jurists could debate whether (or, for

that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983)).

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 1 1(a), 28 U.S.C. foll. § 2254.

Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Petitioner will also not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**V**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 22, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney of record herein by electronic means and upon
Shawn Coats 343052 at 2682 Lawrence, Detroit, MI 48206 by first class
U.S. mail on January 22, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS